IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MON AIMEE CHOCOLAT, INC.,<br><br>Plaintiff,<br>vs.<br><br>TUSHIYA LLC d/b/a MON ÂME CHOCOLAT,<br>and RAMONA THOMAS, an individual,<br><br>Defendants. | Case No. 2:14-cv-01568-MPK<br><br>Chief Magistrate Judge Maureen P. Kelly<br><br>***Electronically filed*** |

**PLAINTIFF MON AIMEE CHOCOLAT, INC.'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

NOW COMES Plaintiff Mon Aimee Chocolat, Inc. ("Plaintiff"), by and through undersigned counsel, and hereby responds in opposition to the motion to dismiss or transfer ECF Nos. 15 and 16 filed by Defendants Tushiya LLC d/b/a Mon Âme Chocolat and Ramona Thomas ("Defendants"). For the reasons stated below, Defendants' motion should be denied in its entirety. Alternatively, this Court should grant Plaintiff's motion for discovery, which is contemporaneously filed herewith.

**I.     BACKGROUND**

MON AIMEE CHOCOLAT started its operations in Pittsburgh, Pennsylvania in 2001, using this name to identify its goods and services. Currently, it is located in the Strip District of Pittsburgh (2101 Penn Avenue, Pittsburgh, PA 15222), and maintains a website www.monaimeechocolat.com, which was started in 2002. It offers various products for sale including

chocolates and other gourmet sweets. Plaintiff's customers, its competitors, and the general public have come to associate high quality chocolate and confectionary products sold by Plaintiff with the MON AIMEE CHOCOLAT mark. *Id.* ¶ 10.

Defendant Ramona Thomas formed Defendant Tushiya LLC on about November 2, 2007, and began selling chocolates and confectionary goods under the name LUXE CHOCOLAT. Ex. 1 at p. 5. In June of 2014, Plaintiff learned that Defendants changed their name to MON ÂME CHOCOLAT, and had started using the website http://monamechocolat.com, which was created on or about May 29, 2014. *Id.* ¶¶ 6 and 11-13. From this interactive website, Defendants sell chocolates and confectionary goods to the general public, provide menu of products sold, a downloadable electronic order form, and offer to ship their products to "U.S. addresses" via, *inter alia* FedEx Ground. *See* Exs. 1 and 2. Ms. Thomas characterizes herself as "the managing member" of Tushiya. ECF No. 16-1 ¶ 1.

Following this name change, and as part of Plaintiff's investigation, Cecilia Dickson purchased chocolate from Defendants interactive website. Ex. 4 at ¶ 4 and Exs. A and D. The order was accepted. *Id.* at ¶ 7. Plaintiff then filed a complaint against the Defendants and sent a cease and desist letter.[1] *See* Exs. 3 and 4 at ¶ 8, and ECF No. 1. Coincidentally, after the complaint

---

[1] Due to health and family concerns, the original complaint was not served (see Civil Action No. 13-836), and was voluntarily dismissed without prejudice pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure on November 14, 2014. A subsequent complaint was filed ECF No. 1. That subsequent complaint was amended before it was served ECF No. 4 and 9.

was filed and the letter was sent, Defendants unilaterally cancelled the order citing "unforeseen circumstances." Ex. 4 at ¶ 10 and Exs. B and C.

The operative Amended Complaint in this matter was filed with this Court on November 20, 2014. ECF No. 4. In it, Plaintiff asserts claims of (1) false designation of origin, pursuant to 15 U.S.C. § 1115(a); (2) cybersquatting, pursuant to 15 U.S.C. § 1115(d); and (3) common law trademark infringement and unfair competition. *Id.* at 4-7.

In spite of the fact that Mon Aimee has superior rights due to its much earlier use of the MON AIMEE CHOCOLAT mark, Defendants filed for a federal trademark registration of MON ÂME CHOCOLAT on June 2, 2014. ECF No. 4 ¶ 14. This application has been allowed, and is currently being opposed by Plaintiff. That opposition has been stayed pending the resolution of this lawsuit.

## II. ARGUMENT

Once a defendant files a motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, "the plaintiff must 'prov[e] by affidavits or other competent evidence that jurisdiction is proper.'" *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009), quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). A plaintiff, however, need only establish "a prima facie case of personal jurisdiction," and is entitled to have the allegations set forth in the complaint taken as true and all factual disputes drawn in his or her favor. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). The complaint must, nevertheless, contain "specific facts" rather

3

than vague or conclusory assertions. *Marten v. Godwin*, 499 F.3d 290, 298 (3d Cir. 2007).

In order for personal jurisdiction to exist over Defendants in the Western District of Pennsylvania, each Defendant must have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1995) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). "Minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Remick*, 238 F.3d at 255, quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 109 (1987).

Pennsylvania's long arm statute allows for the exercise of personal jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b). Specifically within the Pennsylvania long arm statute is the authorization of personal jurisdiction over persons "[c]ontracting to supply services or things in this Commonwealth" and "[c]ausing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." 42 Pa. Cons. Stat. § 5322(a)(2) and (4).

A plaintiff may establish personal jurisdiction under either the theory of general jurisdiction or specific jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). The latter exists when a defendant purposefully has availed itself to the benefits and protections of the forum. *Id.* at 414.

At this time, Plaintiff is aware of at least sufficient contacts to establish specific jurisdiction over Defendants.

### A. Specific jurisdiction over Defendants is proper in Pennsylvania

Specific personal jurisdiction requires the Court to conduct a three-part test. *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). First, a court must determine whether the defendant has "'purposefully directed'" its activities toward the forum state. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, (1984). To meet this requirement, the defendants' physical entrance into the forum is not necessary. *See Burger King*, 471 U.S. at 476; *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993). Instead, the minimum contacts requirement has been defined as "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Asahi,* 480 U.S. at 109 (quoting *Burger* King, 471 U.S. at 475). Even a single contact with the forum jurisdiction can be sufficient to establish the minimum contacts necessary for the exercise of personal jurisdiction. *Burger King,* 471 U.S. at 476 n. 18 (*citing McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223

5

(1957)). "[B]ecause 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." *Burger King*, 471 U.S. at 474 (quoting *McGee*, 355 U.S. at 223).

In the Third Circuit, it is recognized that "if a defendant web site operator intentionally targets the site to the forum state, and/or knowingly conducts business with forum state residents via the site, then the 'purposeful availment' requirement is satisfied." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) (emphasis added).

> [A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) *with the manifested intent of engaging in business or other interactions within the State*, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

*Id.* at 452-53 (quoting *ALS Scan v. Digital Service Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002), and noting that its requirements "are consistent with the principles articulated in the *Zippo* line of cases.") (emphasis added in *Toys "R" Us*).

In *Zippo Mfg. Co. v. Zippo Dot Com*, this Court set forth "a sliding scale" based on the interactivity of a website to determine whether that website created sufficient contact to establish specific jurisdiction. First, "[i]f the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the

6

Internet, personal jurisdiction is proper." 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). A second category is occupied by interactive websites "where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.* Finally, non-interactive websites can never provide the basis for the exercise of personal jurisdiction. *Id.*

"Traditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper." *Id.* (*citing Burger King*, 471 U.S. at 475). "Different results should not be reached simply because business is conducted over the Internet." *Zippo*, 952 F. Supp. at 1124.

In its Amended Complaint, Plaintiff explicitly alleges that Defendant offer goods to "potential customers in this District by way of, at least an interactive website that is publicly available for use in this District, at http://monamechocolat.com. That website includes information stating that product can be shipped to U.S. addresses. . . ." ECF No. 4 ¶ 6. Plaintiff further alleges that Defendants offer products for sale on that interactive website using the MON ÂME CHOCOLAT mark. Those allegations alone are sufficient to meet Plaintiff's *prima facie* burden to establish personal jurisdiction of Defendants. *See Zippo*, 952 F. Supp. at 1124 (discussing interactive web sites); *Miller Yacht Sales,* 384 F.3d at 97 (plaintiff is entitled to have allegations in complaint taken as true).

7

Not only does Plaintiff's complaint establish a *prima facie* showing of specific jurisdiction, the available evidence, obtained during Plaintiff's pre-filing investigation, renders it beyond reasonable dispute that Defendants offer for sale and sell products to individuals in this county and throughout the United States via their interactive website http://monamechocolat.com. *See* Ex. 1. A review of that website shows the advertisement and offer for sale of products bearing the MON ÂME CHOCOLAT mark throughout the United States, including Pennsylvania. *Id.*, generally. The home page includes a link to the http://monamechocolat.com/collections/chocolates under the "Shop" heading, which displays an array of products for sale, along with at least four instances of the infringing MON ÂME CHOCOLAT mark. *Id.* at 1-2. On that page, there is a "Shipping" link, which advertises shipping via "FedEx Ground,[2] UPS Ground, and USPS Priority Mail." *Id.* at 2-3. It also states that "We only ship orders placed through our website to U.S. addresses." *Id.* at 3. The "Business/Corporate" link under the "Delightful Gifts" heading reveals a solicitation for sale of Defendants' products, an email address, a telephone number, as well as an offer to "ship directly to everyone on your list (shipping additional)." *Id.* at 4. The "Contact Us" link at the bottom of each page

---

[2] According to its Facebook page, FedEx Ground's corporate headquarters are located in Moon Township, Pennsylvania – a suburb of Pittsburgh, Pennsylvania. *See* https://www.facebook.com/pages/FedEx-Ground/104146766287172 (last viewed on February 15, 2015). As such, any product sold under the infringing MON ÂME CHOCOLAT mark that is shipped via FedEx Ground creates an additional contact to this state that justifies the exercise of specific personal jurisdiction in this matter. This Court has noted that similar additional contacts provides further support for the exercise of personal jurisdiction over a defendant due to its interactive website. *See Zippo Mfg. Co. v. Zippo Dot Com*, 952 F. Supp. 1119, 1125-26 (W. D. Pa. 1997).

provides fields in which an individual or corporation may "request Mon Âme Chocolat for . . ." a variety of reasons, and provides fields in which an order may be made. *Id.* at 5-6. . The "Order Form" link under the "Shop" heading provides a downloadable electronic order form, which includes a request for address information containing fields for a U.S. State and Zip Code. Ex 2. This electronic order form also provides a link for customers to "[s]ave file with your name and email to orders@monamechocolat.com." *Id.* As such the first prong of the jurisdictional analysis easily is satisfied.

*Zippo* is recognized as being the "'seminal authority regarding personal jurisdiction based on the operation of an Internet web site'" in this Circuit. *Ackourey v. Sonellas Custom Tailors,* 573 F. App'x 208, 211 (3d Cir. 2014) (quoting *Toys "R" Us,* 318 F.3d at 452). In their brief, Defendants merely gloss over *Zippo* line of cases, as well as the interactive nature of their web site, *see* ECF No. 16 at 6-7. They also ignore (1) their offer of sale of goods bearing the infringing MON ÂME CHOCOLAT mark on their interactive web site, (2) the electronic order form that is downloadable from their interactive web site, and (3) their promise to ship goods ordered through their interactive web site to "U.S. addresses". Presumably, this is because the facts, when viewed in the light of the applicable case law, simply do not support their position.

Instead, Defendants rely on Ramona Thomas's assertion that she has not done business in Pennsylvania. *See, generally* ECF No. 16-1. The most notable statement therein is that "[s]ince opening the business approximately in November of 2007, there has not been a single sale of chocolates to the State

9

of Pennsylvania . . . ." *Id.* ¶ 4 However, this assertion - made under penalty of perjury, *see id.* at page 4 – is demonstrably false.

Defendants established contacts with this forum each and every time they have chosen to use FedEx Ground to ship their products that are offered for sale and/or sold under the infringing MON ÂME CHOCOLAT mark.

Setting aside these contacts, the evidence demonstrates that Defendants offered and made a sale of their confectionary products bearing the infringing MON ÂME CHOCOLAT mark in Pennsylvania through their interactive website. *See* Ex. 4 ¶¶ 4-7. Specifically, Ms. Dickson placed an order through the interactive website http://monamechocolate.com for Defendants' products sold under the infringing MON ÂME CHOCOLAT mark on June 24, 2014. When she did so, Defendants prompted her to enter billing and shipping information. She did so, entering an address in the Commonwealth of Pennsylvania. *Id.* ¶ 6. Defendants even responded with a confirmation email listing Ms. Dickson's Pennsylvania address. All of this appears to have been intended because, as Defendants' website states plainly, Defendants' goods are shipped to addresses throughout the United States - which includes Pennsylvania. Exs. 1 and 2. The fact that Defendants ultimately breached the sales agreement after it was made does not save them from the proper exercise of personal jurisdiction – instead, it simply renders them liable for an additional breach of contract claim in Pennsylvania.[3] *See* 42 Pa. Cons. Stat. § 5322(a)(2).

---

[3] The rub here, from a jurisdictional perspective, is not just that Defendants sold their product under an infringing mark in Pennsylvania and then breached that sales agreement. It is that Defendants were perfectly content to

The second prong in the test for specific jurisdiction is that "the litigation must 'arise out of or relate to' at least one of those activities." *Burger King*, 471 U.S. at 472-73 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)). In light of the fact that every contact recited above involves the sale or offer for sale of goods bearing the infringing MON ÂME CHOCOLAT mark via an interactive website that offers to ship to "U.S. addresses" – including Pennsylvania – or the shipping of the same via a corporation headquartered in Pennsylvania, this portion of the test also easily is met.

Even the maintenance of Defendants' interactive website, which gives rise to the present claims of infringement and cybersquatting, and is viewable in the Commonwealth of Pennsylvania, provides a basis for the exercise of personal jurisdiction. *See Croyle v. Hutchison*, No. 11-1141, 2012 WL 2358999, at *5 (W.D. Pa. June 20, 2012) (Kelly, Mag. J.) ("it was the maintenance of the website itself that gave rise to the cause of action, *i.e.*, trademark infringement.").

Third, if the first two elements of the jurisdictional test are met, then the Court must determine whether the defendants' contacts with the forum state are such that maintenance of the action "'does not offend traditional notions of fair play and substantial justice.'" *World-Wide Volkswagon v. Woodson*, 444

---

enter this jurisdiction to do business under the infringing MON ÂME CHOCOLAT mark until it was made clear to them that they might be sued for their infringing conduct. *See* Ex. 3. Because of conduct like this, "'traditional notions of fair play and substantial justice'" demand that Defendants answer for their infringing conduct in this forum. *See Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1995) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

11

U.S. 286, 292 (1980) (*citing Int'l Shoe*, 326 U.S. at 316); *D'Jamoos*, 566 F.3d at 102. With regard to this prong, a court should consider the following factors: "'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King,* 471 U.S. at 477 (quoting *World-Wide Volkswagen,* 444 U.S. at 292). However, it is well recognized that the Due Process Clause is not a "territorial shield to interstate obligations that have been voluntarily assumed." *Burger King*, 471 U.S. at 474.

Because Defendants do not address this prong of the analysis, it is difficult to oppose why Defendants believe that hailing them into court in Pennsylvania would offend traditional notions of fair play and substantial justice – especially in light of their contacts with Pennsylvania, as recited above. Defendants do not provide evidence of any particular burden in traveling to Pennsylvania in Defendant Thomas' Affidavit. *See, generally* ECF No. 16-1. Moreover, as *Zippo* recognized

> ***[t]here can be no question that Pennsylvania has a strong interest in adjudicating disputes involving the alleged infringement of trademarks owned by resident corporations***. *We must also give due regard to the Plaintiff's choice to seek relief in Pennsylvania. . . . These concerns outweigh the burden created by forcing the Defendant to defend the suit in Pennsylvania, especially when [the defendant]* ***consciously chose to conduct business in Pennsylvania, pursuing profits from the actions that are now in question****.*

*Zippo*, 952 F. Supp. at 1127 (emphasis added) (citing *Kulko v. Superior Court of California*, 436 U.S. 84 at 92 (1978)). Accordingly, Plaintiff respectfully submits that each of the third prong's elements weigh in favor of the exercise of personal jurisdiction over Defendants.

Each of Plaintiff's claims sound in trademark law, and thus, the above analysis is equally applicable to all of the claims raised in the operative complaint. Additionally, Ms. Thomas is the "Managing Member" of Tushiya and, under information and belief, is the only member thereof. *See, e.g.*, Ex 1 at 5; *see also* ECF No. 16-1. Thus, under information and belief, each act of infringement and each contact with the form state, is equally attributable to both Defendants. *See Farkas v. Rich Coast Corp.*, No. 2:13-cv-926, 2014 WL 550594, at *18-*19 (W.D. Pa. Feb 11, 2014) ("three circumstances that [are] relevant in determining whether personal jurisdiction can be exercised over a corporate officer for acts performed in such capacity [are]: (1) the extent and nature of a corporate officer's personal participation in the tortious conduct; (2) the nature and quality of the officer's forum contacts; and (3) the officer's role in the corporate structure.") (internal quotes and citations omitted). Because, based on the evidence of record and the well-pleaded allegations of the operative complaint, it appears that Ms. Thomas is the sole decision-maker for Tushiya, and, as such, she likely had a personal role in designing the interactive website and the infringing mark MON ÂME CHOCOLAT, the reasons

13

for exercising personal jurisdiction over Defendant Tushiya extend to her as well.[4]

## B. Venue is proper in the Western District of Pennsylvania

In the operative complaint, Plaintiff asserts that venue is proper in this District under 28 U.S.C. § 1391(b) because "a substantial part of the events giving rise to the claims at issue occurred in this District." ECF No. 4 at ¶ 7. Plaintiffs have pleaded at least that (1) Defendants advertise within this District; (2) may service customers and derive revenue from unlawful activities – *i.e.*, trademark infringement and cybersquatting – within this District, and (3) Plaintiff has suffered harm in this District due to Defendants' acts of infringement. ECF No. 4 at ¶ 7. Additionally, Plaintiff has submitted evidence of at least one actual sale of goods under the infringing MON ÂME CHOCOLAT mark in this judicial District, as well as evidence of an unknown number of contracts to ship goods sold under Defendants' infringing mark with a corporation headquartered located only a few miles from the United States

---

[4] To the extent that this Court remains unpersuaded that the combination of the well-pleaded allegations of the operative complaint, the indisputable evidence of the interactive nature of Defendants' website, and the additional evidence submitted with this opposition are sufficient to meet Plaintiff's burden to establish a *prima facie* case that personal jurisdiction over Defendants is proper in this District, Plaintiff respectfully requests that its motion for jurisdictional discovery – contemporaneously filed herewith – be granted. At the very least, the Declaration of Cecilia Dickson casts doubt over Ms. Thomas's self-serving assertion that Defendants do not do business in Pennsylvania. Limited discovery on this issue is reasonably likely to reveal even more contacts between Defendants and other entities in this state. *See, e.g., Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 458 (3d Cir. 2003) (holding that it was abuse of discretion to deny a plaintiff's motion for jurisdictional discovery when the request was "specific, non-frivolous, and a logical follow-up based on the information known" to the plaintiff).

Court House in Pittsburgh. For at least these reasons, venue in this District under § 1391(b)(2) is appropriate. Moreover, in their supporting brief, Defendants concede that generally, venue is proper in any district where the defendant is subject to personal jurisdiction. *See* ECF No. 16 at 13. Thus, for at least the reasons stated in Part III.A., *supra*, venue is proper in this forum.

### C. Transfer pursuant to 28 U.S.C. § 1404(a) is improper

28 U.S.C. § 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "The purpose of transferring venue under § 1404(a) 'is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Stillwagon v. Innsbrok Golf & Marina, LLC,* Civ. A. No. 2:11–cv–1338, 2013 WL 1180312, at *24 (W.D. Pa. Mar.20, 2013) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 616, (1964)). In adjudicating such a motion, the court must determine first, whether venue in the proposed transferee district is proper. *Farkas,* 2014 WL 550594, at *24. Next, the court must balance the public and private interests to determine whether the transferee forum "would best serve the convenience of the parties and witnesses as well as the interests of justice." *Mitel Networks Corp v. Facebook, Inc.,* 943 F. Supp. 2d 463, 467 (D. Del. 2013). The moving party bears the burden of demonstrating that a transfer is proper at each step of the inquiry. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995).

15

Assuming that venue would be proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(1), Defendants cannot meet their burden under the second prong.

As to the second prong, the above-mentioned private interests have included

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Farkas*, 2014 WL 550594, at *25 (internal citation omitted). Additionally, the private interests have included:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.*

As to the private interests, courts normally defer to a plaintiff's choice of forum – especially when that choice is its home forum. *Stillwagon,* 2013 WL 1180312 at *26 (citing *Samsung SDI Co. v. Matsushita Elec. Indus. Co.*, 524 F. Supp. 2d 628, 631 (W.D. Pa. 2006)). Plaintiff resides in this District, and while Defendants appear to prefer another forum, several important operative facts –

16

such as those necessary to show Plaintiff's superior rights in the MON AIMEE CHOCOLAT mark, those demonstrating instances of actual confusion, and several of Defendant's acts of infringement, as discussed above – occurred here. Thus, this factor weighs in favor of Plaintiff.

Convenience to the parties and to the witnesses also weigh against transfer. Plaintiff resides in this District. While Defendants assert that it has unnamed employees who *might* be called as witnesses who reside outside of this District, Plaintiff can identify employees that reside within this District who may be called upon to testify (but defer in doing so at this time). Moreover, given the shorter period of time Defendants have used the infringing mark MON ÂME CHOCOLAT compared to Plaintiff's use of the MON AIMEE CHOCOLAT mark, it will be easier and less costly for Defendants to bring their records to this District than for Plaintiff to takes its records to Illinois. *See* Ex. 5 (June 16, 2014 blog post announcing name change from Luxe Chocolat to MON ÂME CHOCOLAT).

As for the public factors, any judgment obtained by Plaintiff in this District could be enforced against Defendants here because personal jurisdiction over them exists in Pennsylvania. Moreover, as stated above, Pennsylvania's strong interests in this litigation have been established as a matter of law. *Zippo*, 952 F. Supp. at 1127. Thus, the applicable public interests, too, weigh against transfer.

In light of the well-pleaded allegations of the complaint and the additional evidence submitted herewith, it is clear that Pennsylvania has a

compelling interest in adjudicating this case. However, if this Court determines that this case should be transferred, Plaintiff requests that it consider jurisdictions other than the Northern District of Illinois.

### III. CONCLUSION

For the reasons stated above, it is respectfully requested that Defendants' present motion to dismiss or transfer be denied in its entirety.

Respectfully submitted,

Dated: <u>February 20, 2015</u>

_____
Thomas C. Wolski
PA ID No. 203072
twolski@webblaw.com
David DuMont
PA ID No.205858
ddumont@webblaw.com
The Webb Law Firm
One Gateway Center
420 Fort Duquesne Blvd.,
Suite 1200
Pittsburgh, PA 15222
(412) 471-8815

ATTORNEYS FOR PLAINTIFF
Mon Aimee Chocolat, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of February, 2015, I electronically filed the foregoing **PLAINTIFF MON AIMEE CHOCOLAT, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which sent notification upon all counsel of record.

ATTORNEY FOR PLAINTIFF

_____
Thomas C. Wolski