IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MON AIMEE CHOCOLAT, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 15 C 4235 |
| ) | |
| TUSHIYA LLC d/b/a MON ÂME ) | Judge Virginia M. Kendall |
| CHOCOLAT, and RAMONA THOMAS, an ) | |
| individual, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

On November 14, 2014, Plaintiff Mon Aimee Chocolat instituted this action against Defendants Tushiya LLC d/b/a Mon Âme Chocolat and its owner, Ramona Thomas, after Tushiya renamed its chocolate and confections Internet based business from Luxe Chocolat to Mon Âme Chocolat. The case was transferred to this Court from the Western District of Pennsylvania on May 13, 2015. (Dkt. No. 34.) Mon Aimee seeks injunctive and monetary relief for the Defendants' use of a confusingly similar trademark. Specifically, Mon Aimee's three-count amended complaint brings claims for false designation of origin pursuant to 15 U.S.C. § 1125(a) (Count I); cybersquatting under 15 U.S.C. § 1125(d) (Count II); and common law claims for trademark infringement and unfair competition (Count III).

The Defendants now move to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that they are protected by the First Amendment and that the two marks are not confusingly similar because they maintain disparate pronunciations and translations. In addition to responding to the Defendants' motion, Mon Aimee concurrently moved for sanctions against the Defendants under Federal Rule of Civil Procedure 11, asserting

that the Defendants' motion to dismiss is frivolous and materially misrepresents the applicable law to this dispute. For the reasons that follow, the Court denies the Defendants' motion to dismiss (Dkt. No. 51) and denies Mon Aimee's motion for sanctions (Dkt. No. 64).

## BACKGROUND

The Court takes the following facts from Mon Aimee's amended complaint and treats them as true for purposes of this motion. *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). The Court also considers Exhibits C, D, E, and F to the Defendants' motion to dismiss because the documents are either critical to the amended complaint and referred to therein or subject to judicial notice as United States Patent and Trademark Office ("USPTO") Records[1]. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.") (citations and internal quotation marks omitted); Fed. R. Evid. 201(b) (courts may judicially notice facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also, e.g.*, *Slep-Tone Entm't Corp. v. Kalamata, Inc.*, 75 F. Supp. 3d 898, 904 (N.D. Ill. 2014) ("The Court may properly take judicial notice of official records of the United States Patent and Trademark Office.") (citation omitted); *In re Unified Messaging Solutions, LLC Patent Litigation*, No. 12 C 6286, 2013 WL 5405698, at *1 n.4 (N.D. Ill. Sept. 25, 2013) (court judicially noticed website printouts recovered from the USPTO).

Mon Aimee is a Pennsylvania corporation primarily operating out of Pittsburgh. (Dkt. No. 4, Am. Compl. ¶ 2.) Mon Aimee has used its mark, "Mon Aimee Chocolat," since September 2001 in relation to its chocolate and confections business. (*Id.*) Defendant Ramona

---

[1] Exhibits C and E are screenshots of the parties' respective web sites. Exhibits D and F are trademark applications recorded by the USPTO. *See* Dkt. No. 51-2.

Thomas is the sole employee and owner of Defendant Tushiya, which does business as Mon Âme Chocolat. (*Id.* at ¶¶ 3-4.) The Defendants operate as an Illinois limited liability company primarily out of Chicago. (*Id.*) Mon Âme began using its current mark recently, announcing a change of its business name from Luxe Chocolat to Mon Âme Chocolat on June 16, 2014. (*Id.* at ¶¶ 3, 4, 11.)

Mon Aimee has used its mark since September 2001 and simultaneously uses the domain name "http://monaimeechocolat.com" to advertise its products nationwide. (*Id.* at ¶¶ 8-9.) Mon Aimee alleges it has invested significant resources marketing its products and that its mark has become a valuable business asset. (*Id.* at ¶ 10.) On May 29, 2014, the Defendants changed their domain name from "http://luxechocolat.com" to "http://monamechocolat.com." (*Id.* at ¶¶ 12-13.) The Defendants additionally acquired and began using the domain name "http://monamichocolat.com." (*Id.* at ¶ 28.) On June 2, 2014, the Defendants filed a federal trademark application for Mon Âme Chocolat in relation to its chocolate goods and online ordering services. (*Id.* at ¶ 14.) Mon Aimee filed a federal trademark application to formalize its preexisting use of the Mon Aimee Chocolat mark on June 24, 2014. (*Id.* at ¶ 15.) Mon Aimee was unaware of the Defendants' use of the Mon Âme Chocolat mark until June 2014. (*Id.* at ¶ 16.)

## **LEGAL STANDARDS**

The Defendants move to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive dismissal, Mon Aimee's amended complaint must provide enough factual information to "state a claim to relief that is plausible on its face." *See Defender Sec. Co. v. First Mercury Ins. Co.*, No. 14-1805, 2015 WL 5692516, at *6 (7th Cir. Sept. 29, 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court draws all reasonable inferences and construes all facts in the light most favorable to the plaintiff. *See Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014).

Mon Aimee additionally moves for sanctions against the Defendants, arguing that the motion to dismiss lacks arguable merit. Federal Rule of Civil Procedure 11(b) states that by presenting papers to the Court, the attorney or party certifies that the filing is "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and that the legal argument offered is "warranted by existing law or by a nonfrivolous argument" for altering the law. *See* Fed. R. Civ. P. 11(b). An argument that is baseless or made without a reasonable and competent inquiry into its merit may incur penalty under Rule 11. *See Berwick Grain Co., Inc. v. Ill. Dep't of Agric.*, 217 F.3d 502, 504 (7th Cir. 2000). The Court employs a standard of objective reasonableness when reviewing a Rule 11 motion and considers whether the party or counsel should have known the position was groundless. *See Cuna Mut. Ins. Soc'y v. Office and Prof'l Employees Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006). Rule 11 sanctions are imposed sparingly, "as they can have significant impact beyond the merits of the individual case[.]" *See Hartmarx Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003).

## DISCUSSION

### I. Motion to Dismiss

At the outset, the Court briefly addresses and dispatches two of the Defendants' arguments. First and foremost, the Court summarily dispels the Defendants' notion that Mon

Aimee's motive for filing this suit was race-based or "an attempt to drive a minority owned" entity out of business. This position is baseless and unsupported by the record. The Court accordingly lends it no credence. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) (unsupported arguments are waived).

The Court additionally disposes of the Defendants' argument that their use of the Mon Âme Chocolat mark is protected by the First Amendment. The Defendants use much of their 22-page brief to posit that their use of the mark constitutes an expressive work on their commercial web site. The Defendants ask the Court to apply the reasoning from *Rogers v. Grimaldi*, where the Second Circuit concluded that First Amendment interests trumped trademark claims in the context of a film. *See generally* 875 F.2d 994 (2d Cir. 1989). The Defendants seek a similar conclusion that they are immune from Lanham Act claims, asserting that the web site from which the Defendants sell their chocolate products is an artistic work. *See Rogers*, 875 F.2d at 999 ("the Act should be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression").

The Seventh Circuit has not adopted the *Rogers* test. *See, e.g.*, *Eastland Music Group, LLC v. Lionsgate Entm't, Inc.*, No. 11 C 8224, 2012 WL 2953188, at *3 (N.D. Ill. July 19, 2012).[2] Even if it had, the problem with the Defendants' position is that it necessitates a ruling that, as a matter of law, "http://monamechocolat.com" is an artistic work. Doing so would ignore Mon Aimee's allegations, accepted as true at this stage, that the Defendants use their web site to advertise and sell their chocolate products throughout the United States. (Am. Compl. ¶ 6); *see Bible*, 799 F.3d at 639. The Defendants concede that they sell their products through their online

---

[2] Other circuits have held that the *Rogers* test applies to uses of a trademark in either the title or body of an artistic work. *See Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*, 683 F.3d 1266, 1278 (11th Cir. 2012) (applying Lanham Act exception to "paintings, prints, and calendars"); *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008); *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 928 n.11 (6th Cir. 2003).

5

store. (Dkt. No. 54-1 at 13.) Mon Aimee's allegations, coupled with the Defendants' admission, therefore plausibly demonstrate that the Defendants use their web site for a commercial, rather than artistic, purpose, and the Court will not dismiss the amended complaint based on First Amendment grounds.

  A.  **Counts I and III: False Designation of Origin and Unfair Competition**

Turning now to the viability of Mon Aimee's claims, although the Defendants moved to dismiss the entire amended complaint but failed to address each count separately, Counts I and III of the amended complaint involve the same elements and standards.[3] *See Fortres Grand Corp. v. Warner Bros Entm't Inc.*, 763 F.3d 696, 700-01 (7th Cir. 2014) (likelihood of confusion analysis applies equally to Lanham Act and state law unfair competition claims); *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 881 (7th Cir. 1997) ("federal and state laws regarding trademarks and related claims of unfair competition are substantially congruent"); *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 619 (7th Cir. 1993) (state unfair competition claims mirror infringement analysis) (citation omitted). Because Counts I and III require the same pleading elements, they are addressed in tandem with respect to the Defendants' motion to dismiss.

To state a claim under either the Lanham Act or the state law claims pleaded here, Mon Aimee must allege that "(1) [its] mark is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers." *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001). The Defendants' remaining arguments for dismissal can be generally divided into three categories: (1) Mon Aimee has failed to plead it has a protectable interest in its mark; (2) the Defendants' use of the Mon Âme Chocolat mark is not misleading; and (3) the

---

[3] Count I alleges trademark infringement under the Lanham Act while Count III pleads congruent state law infringement and unfair competition claims. *See* 15 U.S.C. § 1125.

Defendants' should prevail under a fair use defense. None of these contentions provides a reason for dismissal.

   1. **Protectable Mark**

A plaintiff may allege a protectable mark in one of three ways: (1) by alleging that the mark is registered with the USPTO; (2) by alleging a mark in the Supplemental Register, which does not receive the presumption of validity associated with a registered mark because it is only "capable" of becoming a trademark; or (3) by alleging an unregistered mark that is entitled to protection under Section 1125 of the Lanham Act. *See* 15 U.S.C. § 1057(b); *see also, e.g.*, *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 954 (7th Cir. 1992) ("trademark rights derive from the use of a mark in commerce and not from mere registration of the mark"); *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1013-14 (N.D. Ill. Sept. 2, 2014). Where a mark is unregistered, as here, "the burden is on the claimant . . . to establish that it is entitled to protection under § 43(a) of the Lanham Act." *Platinum Home Mortgage Corp. v. Platinum Fin. Corp., Inc.*, 149 F.3d 722, 727 (7th Cir. 1998) (citing *Mil-Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1156 (7th Cir. 1996)). The level of trademark protection available to unregistered marks corresponds to the distinctiveness of the mark. *See Platinum Home*, 149 F.3d at 727 (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-68 (1992)).

Trademarks are generally classified into five categories of increasing distinctiveness: "generic, descriptive, suggestive, arbitrary and fanciful." *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 684 (7th Cir. 2001) (citation omitted). The Defendants contend that Mon Aimee's mark should be afforded no protection because it is generic. *See Platinum Home*, 149 F.3d at 727 (generic term is "one that is commonly used and does not identify any particular source and, therefore, is not entitled to any trademark protection"). The Defendants similarly

argue that even if the mark is descriptive, it should not receive protection because Mon Aimee has not established that its mark has acquired a secondary meaning. *See id.* (descriptive mark "describes the ingredients, qualities, or characteristics of an article of trade or a service"); *Mil-Mar Shoe*, 75 F.3d at 1157 (descriptive mark may receive trademark protection if it acquires secondary meaning "in the collective consciousness of the relevant community") (citation omitted). Suggestive, arbitrary, and fanciful marks, on the other hand, are "automatically entitled to trademark protection because they are inherently distinctive." *Platinum Home*, 149 F.3d at 727 (citing *Two Pesos*, 505 U.S. at 767-68).

Mon Aimee sufficiently alleged the protectability of its mark to survive dismissal on this ground. The mark is plausibly suggestive or arbitrary, as "Mon Aimee Chocolat," which translates to "My Beloved Chocolate," is neither generic nor merely descriptive of the ingredients in the product aside from the term "chocolat."[4] However, even if the Court were to conclude that the mark was merely descriptive, Mon Aimee expressly alleged that its mark has developed secondary meaning. (Am. Compl. ¶ 10.) "A mark acquires secondary meaning when it has been used so long and so exclusively by one company in association with its goods or services that the word or phrase has come to mean that those goods or services are the company's trademark." *Packman*, 267 F.3d at 641. Proof of secondary meaning comes in many forms, including "direct customer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market, and evidence of intentional copying. *See id.* Here, Mon Aimee alleged that it has used its mark since 2001, that it has expended significant resources and effort in promoting its mark and products, and that its customers, competitors, and members of the general public associate its mark with high quality

---

[4] The Defendants assertion that Mon Aimee disclaimed both "mon" and "chocolat" in its pending trademark application with the USPTO. This is inconsistent with the USPTO documents attached to the motion to dismiss. *See* Dkt. No. 54-2 Ex. D (requiring disclaimer of "chocolat" as merely descriptive).

chocolate products. (Am. Compl. ¶ 10.) These allegations regarding protectability sufficiently raise the possibility of relief above the speculative level.

## 2. Likelihood of Confusion

The Defendants also argue that there exists no likelihood of confusion between the trademarks because of the geographical distance between the entities and because reasonable consumers would quickly recognize the difference between the two products. Seven factors comprise the likelihood of confusion analysis: "(1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015) (citation omitted). No single factor is dispositive and courts may assign varying weight to each, "though usually the similarity of the marks, the defendant's intent, and actual confusion are particularly important." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). Likelihood of confusion is ultimately a question of fact, making it difficult to determine at the pleadings stage. *See Bd. of Regents of Univ. of Wis. Sys. v. Phx. Int'l Software, Inc.*, 653 F.3d 448, 452 (7th Cir. 2011).

The amended complaint includes facts relating to the first, second, third, fifth, and seventh factors. Viewed together, these factual allegations are sufficient to survive the Defendants' motion to dismiss and properly plead the likelihood of confusion element to Mon Aimee's first and third claims.

####   a. Similarity Between the Marks

Mon Aimee adequately pled a similarity between its mark and the mark used by the Defendants. "To determine whether two marks are similar, we view the marks as a whole." *Sorensen*, 792 F.3d at 726. Accordingly, the Defendants' initial contention that the Court should only compare "Aimee" and "Âme" because "Mon" and "Chocolat" are not distinctive carries no weight. Comparing only the non-shared portions of the mark "would violate the 'anti-dissection rule' that requires marks to be viewed in their entirety." *See AutoZone*, 543 F.3d at 931 (citing *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 795 (6th Cir. 2004)).Moreover, the Defendants' argument that because the competing marks maintain different English translations, there can be no similarity, is meritless.[5] Important here, the Court "compare[s] the marks in light of what happens in the marketplace and not merely by looking at the two marks side-by-side." *Sorensen*, 792 F.3d at 726. "The test is not whether the public would confuse the *marks*, but whether the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected." *AutoZone*, 543 F.3d at 929. While the Defendants' argument may have merit in a future stage of litigation, as of now, the argument does not warrant dismissal of the amended complaint.

Here, both parties' marks are comprised of three words. Both marks are written in French and have "Mon" as the first word and "Chocolat" as the third. The only difference between the marks is Mon Aimee's use of "Aimee" and the Defendants' use of "Âme," words that differ by only two letters and could plausibly be pronounced similarly by English speakers.[6] The minor dissimilarities between the marks, when viewing the facts in the light most favorable to Mon

---

[5] "Mon Aimee Chocolat" translates to "My Beloved Chocolate" while "Mon Âme Chocolat" translates to "My Chocolate Soul."

[6] Because Mon Aimee alleges that both parties primarily market their products within the United States, the Court makes the reasonable inference that a majority of the consumers purchasing the products are English speakers.

Aimee at this stage, do not require dismissal. The marks are visually similar to each other and Mon Aimee has therefore sufficiently alleged the first factor in the confusion analysis.

### b. Similarity of the Products

The relevant inquiry for this factor "is not whether the products are interchangeable, but whether the products are the kind the public might very well attribute to a single source." *Sorensen*, 792 F.3d at 728-29. Mon Aimee addresses this factor and sufficiently alleges its existence by claiming that both parties sell chocolate and confectionary products. The Defendants do not dispute that they sell chocolates and confectionaries through their online store. The products are therefore more than similar enough to raise the possibility of relief with regard to this factor above the speculative level.

### c. Area and Manner of Concurrent Use

Under the third factor, the Court assesses "whether there is a relationship in use, promotion, distribution or sales between the goods or services of the parties." *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 900 (7th Cir. 2001) (citations and internal quotation marks omitted). Courts may consider "the relative geographical distribution areas . . . whether there exists evidence of direct competition between the products . . . whether the products are sold to consumers in the same type of store . . . whether the products are sold in the similar section of a particular store . . . and whether the product is sold through the same marketing channels." *Id.*

The Defendants contend that Mon Aimee fails to plausibly allege this factor because they are based in Chicago while Mon Aimee operates out of Pittsburgh. This ignores Mon Aimee's allegation that both parties market and sell to consumers across the United States. (Am. Compl. ¶¶ 6, 9.) While Mon Aimee primarily sells its products out of its physical store, it similarly uses an online web site to advertise its products. (*Id.* at ¶ 8.) Accordingly, Mon Aimee sufficiently

alleges that the parties utilize their competing marks in the same channels of commerce. *See CAE, Inc.*, 267 F.3d at 681-82.

### d. Strength of Mon Aimee's Mark

Regarding the fifth factor, courts examine "the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular . . . source." *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 464 (7th Cir. 2000). "The stronger the mark, the more likely it is that encroachment on it will produce confusion." *Sorensen*, 792 F.3d at 731 (quoting *AutoZone*, 543 F.3d at 933). The strength of a mark usually corresponds to its economic and marketing strength. *See AutoZone*, 543 F.3d at 933.

Contrary to the Defendants' assertion, Mon Aimee's failure to allege actual confusion is not fatal to its claims. *See CAE, Inc.*, 267 F.3d at 685 ("Although evidence of actual confusion, if available, is entitled to substantial weigh in the likelihood of confusion analysis, this evidence is not required to prove that a likelihood of confusion exists.") (citations omitted). Mon Aimee alleges that, since 2001, it has expended significant resources marketing its products under its mark and that, as a result of this effort, the mark has acquired secondary meaning. This allegation sufficiently alleges the existence of a strong mark at this stage.

### e. Intent to "Palm Off"

This factor focuses on whether a defendant acted in bad faith and attempted to pass of its product as that of the plaintiff's. *See Sorensen*, 792 F.3d at 731. Mon Aimee alleges that the Defendants have misappropriated the Mon Aimee Chocolat mark in an effort to benefit from the goodwill associated with the mark. (Am. Compl. ¶ 24.) Though this allegation is not particularly helpful because it is a legal conclusion, as opposed to a fact, Mon Aimee's alleged facts detailed above are sufficient to "give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests." *See Twombly*, 550 U.S. at 555. Accordingly, the Court denies the Defendants' motion to dismiss based on their challenge to likelihood of confusion.[7]

The Defendants also argue that they should prevail under a fair use defense. But "a plaintiff is not required to negate an affirmative defense in his complaint." *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003). Accordingly, the Court declines to dismiss the amended complaint on fair use grounds.

### B. Count II: Cybersquatting

The Defendants do not specifically address Mon Aimee's cybersquatting claim in their motion to dismiss. However, because they moved to dismiss the amended complaint in its entirety, the Court briefly outlines the elements required to state a cybersquatting claim under Section 1125.

Under the Anticybersquatting Consumer Protection Act, a defendant is liable for cybersquatting to the owner of a protected mark if the defendant (1) "has a bad faith intent to profit from that mark, including a personal name which is protected under this section;" and (2) "registers, traffics in, or uses a domain name that" is identical or confusingly similar to or dilutive of a mark that is distinctive or famous. *See* 15 U.S.C. § 1125(d)(1)(A). Here, Mon Aimee properly alleged that its mark is distinctive, that the Defendants use a domain name ("http://monamichocolat.com") that is confusing similar to its mark, and that the Defendants began using the domain name with the bad faith intent to profit from its similarity to Mon Aimee's mark. (Am. Compl. ¶¶28-30.) Mon Aimee also alleged that it has incurred extensive

---

[7] The Court additionally denies the Defendants' motion to dismiss Thomas in her individual capacity. The parties agree that an officer of a company may be personally liable for trademark infringement where the individual "personally participates in the manufacture or sale of the infringing article." *See, e.g.*, *Drink Group, Inc. v. Gulfstream Commc'ns, Inc.*, 7 F. Supp. 2d 1009, 1010 (N.D. Ill. 1998) (quoting *Dangler v. Imperial Mach. Co.*, 11 F.2d 945, 947 (7th Cir. 1926)). Here, Mon Aimee alleged that Thomas herself offers products for sale under the challenged mark. (Am. Compl. ¶ 6.) This is sufficient to state a claim against Thomas individually.

advertising expenditures in an effort to market its products, resulting in a well-known mark. Accordingly, Mon Aimee sufficiently alleged the requisite elements for its cybersquatting claim. The Court therefore denies the Defendants' motion to dismiss in its entirety.

## II. Motion for Sanctions

Mon Aimee filed a motion for sanctions against the Defendants concurrent with responding to the Defendants' motion to dismiss, arguing that the motion to dismiss was frivolous in violation of Rule 11. A frivolous argument, one that is simply baseless or made without a reasonable and competent inquiry, may incur penalty under Rule 11. *See Berwick Grain Co.*, 217 F.3d at 504. Here, the Defendants' positions taken in their motion to dismiss are not the type of extreme conduct necessary to warrant sanctions.

Although the Defendants' motion contained the inflammatory implication that Mon Aimee filed its lawsuit because of Thomas's race, this argument was minor in relation to the entirety of the motion to dismiss and is not substantial enough to impose the severe punishment of sanctions. *See Hartmarx Corp.*, 326 F.3d at 867 (Rule 11 sanctions are imposed sparingly). Nor is the Defendants' argument that their web site is an expressive work reason to levy sanctions. Although unsuccessful, partially because the parties are at the pleadings stage, it was a creative argument that cited to relevant facts and authority and was not completely baseless. *See id.* (sanctions imposed infrequently in part to avoid discouraging creativity in legal arguments).

Moreover, Mon Aimee's argument that the Defendants improperly advanced a position that Mon Aimee failed to plausible allege a likelihood of confusion because the resolution of that issue is inherently fact-based ignores the reality that defendants in trademark infringement actions challenge confusion allegations regularly. *See, e.g.*, *KJ Korea, Inc.*, 66 F. Supp. 3d at

14

1005; *Slep-Tone Entm't Corp. v. Coyne*, 41 F. Supp. 3d 707 (N.D. Ill. 2014). The Court does not find the Defendants' conduct here to be deserving of sanctions.

Sanctions are inappropriate unless the Defendants filed its motion to dismiss without a reasonable basis in fact. *See City of East St. Louis v. Circuit Court for Twelfth Judicial Circuit, St. Clair County, Ill.*, 986 F.2d 1142, 1143 (7th Cir. 1993). Here, the Defendants presented colorable arguments that may carry more weight once discovery is completed. Accordingly, the Court denies Mon Aimee's motion for sanctions.

## CONCLUSION

For the reasons stated herein, the Court denies both the Defendants' motion to dismiss (Dkt. No. 51) and Mon Aimee's motion for sanctions (Dkt. No. 64).

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 10/22/2015